Corporation v. American Longshore Mutual Association. Mr. Woods, we'll hear from you first. Good morning, your honors. May it please the court, my name is Jonathan Woods and I represent American Longshore Mutual Association, which is being referred to in this case as ALMA, for short, in connection with the issues that are before the court on appeal. The background facts of this case are that there were six fluid crane employees who were on a lift boat, the lift boat in the Gulf of Mexico, the lift boat listed in the six fluid crane employees. Sustained injuries as a result of that lift boat. The lift boat was owned by a company called Aries Marine that fluid crane, the employer of the six injured workers, did not have a contract with. It was unbeknownst to fluid crane, when it signed its contract with Fieldwood, that a lift boat would be contemplated because, as the district court recognized and what was testified in the deposition in the trial court level, was that the lift boat wasn't needed for fluid crane's work. They were replacing grading and handrails on a fixed platform. And throughout the course of their contract, they had traveled each time to the platform with a supply vessel and they would so there was no need for a lift boat. But in any event, a lift boat was obtained because Fieldwood felt like it would be more efficient to provide housing services to the workers so they did not have to go back and forth between platforms. As a result of the injured, six injured workers being paid, being injured, fluid crane's workers compensation insurer, which is Alma, paid approximately $1.25 million, which is continuing to date, in Longshore Worker Harbor compensation benefit to the injured workers. Aries Marine came in to the lower court. They filed a limitation of liability action and fluid crane, Alma, and its employees all made claims in that limitation. The posture of this case is that on the eve of trial and after all of the discovery deadlines had passed and all the dispositive motion deadlines had passed, the Fieldwood group filed a motion for leave of court to file a motion for summary judgment advising the court that Alma's lien, the $1.25 million, was the impediment to settlement and that the case would resolve if Alma's lien was resolved. We submit that that was highly prejudicial and that the court erred in granting the motion to leave, but that's not before the court. What's before the court is the subsequent ruling of the district court that dismissed Alma's lien by determining that it waived its right of subrogation. This court, I'm certain, is aware that it reviews any type of summary judgment ruling de novo. A party is only entitled to a summary judgment ruling if there's no genuine issue of material fact and they're entitled to a judgment as a matter of law. The issue of fact here in this case is whether, one, there was a waiver of subrogation that was valid, and two, if that waiver of subrogation was valid, did it extend to Aries Marine and did it extend to the injured claimants? The only way for the waiver of subrogation to be argued that it extended to the lift boat, to Aries Marine, or to the claimants, were to argue that it falls, those members fall within the term invitee or underneath the company group of the contract between Fluid Grain and Fieldwood. Since the word invitee was not defined in the contract, the district court looked at this court's holding in blanks and determined that an invitee would be somebody who physically goes on premises of another with the expressed or implied permission. Now, this is where it gets somewhat attenuated in the position of Alma, because there is no evidence in the record that any employee or member of Aries Marine ever went on the platform. They stayed entirely on the lift boat, which was in the Gulf of Mexico, floating. Fieldwood group argued in summary judgment that the placing of a walkway between the vessel and the platform constituted occupying the premises of Fieldwood. Alma disputed those facts on the basis that the deposition testimony that was cited in support of that contention did not say what Fieldwood said it said. Instead, the deposition testimony was from the captain, and the captain said, I gave orders for the placement of a walkway, but then I went to sleep. So the captain was unable to affirmatively testify whether the walkway was ever placed, and the captain was also ever unable to testify whether there was any more transfers made via a personnel basket, and the captain was unable to say if anybody from Aries Marine ever accessed the platform. So Alma submitted that there was an issue of material fact with respect to the invitee status of Aries, because there was a question of fact as to whether they ever accessed the premises to be deemed an invitee under the definition of blanks. This brings us to the second argument of Alma, which is that even if Alma were to qualify as an invitee, that the waiver of subrogation did not extend to Alma, did not extend to Aries, because fluid crane did not have a contractual relationship with Alma. There was no blanket waiver of subrogation in the Alma policy between Alma and fluid crane. Instead, there was a limited endorsement that said essentially that Alma would agree to waive its right of subrogation to any individual firm, organization, or corporation which fluid crane had a contractual interest with. Alma's position is that fluid crane did not have a contract with Alma, and it did not have a contract with its injured workers to waive its right of subrogation, and therefore that the waiver of subrogation, even if it's found to exist in the court, which is completely denied as stated in my first argument, that even if it existed, and even if the court were to find it, it doesn't extend to this party because fluid crane did not have a bargain for interest with Aries Marine. They didn't need the equipment for their work, and they didn't contemplate that the vessel would be used when they signed the contract with Fieldwood. If we take even a further step back, Alma's contention to the trial court and to this court is that any waiver of subrogation that is included in an oilfield contract is invalidated by the Louisiana Oilfield Indemnity Act under 927 ADG as long as it frustrates or circumvents the act. The Louisiana legislature has determined in passing this legislation that it would be against public policy to enforce these types of waivers because a Louisiana subcontractor was in an equitable bargaining position with the larger operator companies. So the waiver of subrogation is on its face invalidated under 927 ADG. The way that the district court found an exception to that is the district court cited to the cases of Fontenot, which was a Louisiana Supreme Court case, and Hudson, which is a case of this circuit, which found exceptions to the otherwise prohibited language, but those exceptions were limited to instances where the operator or the owner was not seeking defense and indemnity and the worker's compensation carrier was paid a premium in exchange for its waiver, meaning there was consideration. So this court and the Louisiana Supreme Court said in those limited circumstances that these types of subrogation waivers don't violate public policy because the carrier was compensated, quite frankly, for that waiver. Those are not the facts that we have in this case. That's why Alma argues that Hudson and Fontenot are completely inapplicable with respect to its position in this case because Fieldwood and Aries Marine have at all times sought defense and indemnity from Fluid Crane under the contract, and Aries continues to do that just two weeks ago, filing a motion for reconsideration with respect to the court's previous ruling on that issue. So from a practical perspective, Fluid Crane is incurring defense costs to defend against the claims, the contractual under its CGL policy, while at the same time incurring the cost in connection with the longshore claims. Let me ask you, I don't want to oversimplify your case, but it seems like based upon the first part of your argument that you believe it is erroneous for the district court to have found your client to be an invitee, number one, as a matter of fact. Yes, sir. And you believe that there was a legal error committed by the district court in terms of the contractual interpretation, that is, whether or not the waiver encompasses the parties such as yours. Is that? 100 percent, exactly. So going back, Fluid Crane did not have a contractual interest with Aries Marine, and if it did, and because it did not, Aries Marine cannot be said to have been a party who could have unveiled themselves to the waiver of subrogation. This would probably bring us now to the larger issue that we would argue this society and policy reasons of why the district court's summary judgment is so detrimental to the workers' compensation carrier. In addition, the fact that it won't recover its $1.25 million lien, but the purpose and the scheme of workers' compensation is very liberally interpreted such that injured workers are paid virtually immediately after the accident. The Longshore Compensation Act requires them to pay benefits within 14 days. It requires them to play medical, which they did. In exchange for doing so, this court has recognized repeatedly in Peters, Schenever, and Taylor that the longshore carrier has a right of subrogation against a responsible third party to recover those benefits paid. We acknowledge, ALMA acknowledges that the right of subrogation can be waived, but Fluid Crane and ALMA both have the right to limit that waiver of subrogation, and they limited it in the endorsement which said the waiver only applied to those parties who had a direct contractual interest. And in this case, because Ares Marine did not have a direct contractual interest with Fluid Crane, the waiver doesn't extend to them. And same with respect to the claimants. Fluid Crane certainly had some type of contractual relation because they were the employer with their employees, but there was no contractual relationship to waive their right of subrogation to recover in the event that somebody else caused it. ALMA submits in conclusion that Ares Marine doesn't qualify as an invitee because they never accessed the platform, and there's an issue of material fact. It submits that the waiver of subrogation did not extend to Ares Marine because they were not in contractual privity with Fluid Crane. That waiver of subrogation does not extend to the claimants because they did not have a contractual agreement with Fluid Crane. And if this court were to allow the district courts ruling to stand, the claimants get a double recovery in this case, and the workers' compensation carrier does not get any money back with respect to the third-party tort suit. And instead, it's defending and incurring the cost to defend against these contractual indemnity claims, which continue to be made on this side of the court. Thank you. Thank you, Mr. Woods. You've saved five minutes for Mr. Greenbaum. May it please the Court, Your Honors, Aaron Greenbaum and my colleague Anna Carey, on behalf of Ares Marine Corporation. I've reserved only two minutes because counsel for Fieldwood Energy is going to address the bulk of the arguments, but I did want to address very briefly the invitee issue and the undisputed facts before the court as to Ares Marine. And just at the outset, a note, this matter is set for a bench trial before U.S. District Judge Brandon Long for early December of 2024. So as mentioned, the term invitee is not defined in the applicable master service agreement here between Fluid Crane and Fieldwood, but the court in blanks and then again in Grogan set forth the applicable definition, which is a person who goes on to business of the occupant or for their mutual advantage. And the following facts in the record are undisputed or they were disputed as immaterial without citation to record evidence by Fluid Crane. So Ares Marine was a contractor of Fieldwood. It had a master time charter agreement in place to provide the RAM-18 lift boat for work at the WD-68U platform. Fieldwood expressly invited the RAM-18 into the 500 meter radius surrounding the platform. At the express invitation of Fieldwood, the RAM-18 set down its legs onto the seabed of the Gulf of Mexico within the lease. It was not floating. It was jacked up. And at the express invitation of Fieldwood, the RAM-18 was physically connected to and was resting upon the WD-68 platform at the time of the incident by virtue of a metal walkway or gangway. And I see my time is up, Your Honor, but that is confirmed by the deposition testimony of the... Thank you. Your Honor. Good morning, Your Honors. My name is Jim Burkaw. I'm here on behalf of Fieldwood Energy LLC and the Lafayette Council for the Fluid Crane Claimants, the personal injury individuals involved in the limitation proceeding have, for good or bad, designated me as their spokesperson for purposes of this appeal. Just a few general principles before we get into the argument. As another panel of this court recently issued an opinion in March 18 of 2024, it's the QBE Syndicate 1036 v. Compass Minerals case. This court is a strict stare decisis court. A prior panel's interpretation of state law, which would here be the Louisiana law pursuant to and because it's OXLA, it's technically federal law that we're applying, but we're adopting Louisiana law as federal law. So in the absence of an intervening decision by the Louisiana Supreme Court or the amendment to the Louisiana Oilfield Indemnity Act, where the Supreme Court of Louisiana has decided an issue, then the inquiry into Louisiana law ends there. There's been no such intervening decision by the Supreme Court and there's been no amendment to the Louisiana Oilfield Indemnity Act. As this court is well aware, in Hudson v. Forest Oil Company, it adopted the express ruling of the Louisiana Supreme Court in Fontenot v. Chevron USA. Both decisions determined that waivers of subrogation by a longshore carrier, such as Alma here, are not barred by the Louisiana Oilfield Indemnity Act. Here, the purpose of the Anti-Indemnity Act is to protect contractors and contractor employees, not longshore insurers, who have agreed to contractually waive their rights of subrogation. That's the Fontenot decision at page 563 and the Hudson decision at page 744. The invalidation of such waivers might very well do damage to basic concepts of contract law. The agreement for payment in exchange for waiver is normally a valid contract provision, and that's at Fontenot at 567 and Hudson at 746. We hear a lot, without any record citation, that somehow Alma was not compensated for the waiver of subrogation endorsement in its policy. That is directly contrary to the record. The Alma policy contained the waiver of subrogation as part of its policy form, and you can observe that at page 31224 of the record in appeal. That endorsement stated, subrogation was waived by Alma, but only when required by a written contract, which we have here, the Fluid Crane Master Service Contract, and only to the extent required by that contract. We'll jump ahead for a second. That contract contained an unconditional waiver of subrogation on the part of Fluid Crane in favor of the Fieldwood Group. It's actually the company group, but we'll call it Fieldwood Group for purposes of clarity. Now, Fluid Crane paid Alma for the Alma policy in 12 monthly installments based upon whatever pricing scheme they had. So to say that Alma was not paid for the waiver is just not true. What counsel is suggesting is that somehow an extra premium would be required, as was in the additional insured provisions of this Court's decision in Marcelle v. Placid Oil Company. That's not the case. If you read Fontenot and Hudson, it's the employer of the employees who have the compensation benefit who is paying for the waiver of subrogation. This case is on all fours with Fontenot and Hudson in that regard. To suggest otherwise is to ignore their own policy and to ignore the company's policy. Now, one of the issues is whether Fluid Crane's employees qualified as Fieldwood's invitees and whether Ares Marine qualified as Fieldwood's invitees and therefore fell within the umbrella of the definition of the Fieldwood Group. We don't disagree with what the standard of invitee status is under this case. It's been settled by this Court in Blanks v. Merco Drilling and again in Brown v. Seymour Management and more recently in Grogan v. W&T Offshore. An invitee is a person who goes on to premises with the express or implied invitation of the occupant, on business of the occupant, or for their mutual advantage. The lower courts in the Eastern District and in the Western District of Louisiana who have considered this issue have said a contractor of the premises occupant qualifies as an invitee. Well, if that's the case, then Fluid Crane's employees and Ares Marine are both invitees based upon that reasoning. Now, it's undisputed that Fieldwood is the occupant for purposes of invitee status. It owned and operated the platform at issue and it time chartered the RAM-18 from Ares Marine. And this Court concluded time charters qualify as an occupant of the vessel for purposes of invitee analysis. That's Brown v. Seymour and Grogan v. W&T Offshore like I mentioned just now. Well, it's undisputed that the RAM-18 charter was chartered by Fieldwood because Alma agreed with it in the record in its statement of or its reply to our statement of facts. And it's also undisputed that the RAM-18 elevated to its working height at West Delta 68U. That appears at the record in two locations and it's because it's an undisputed fact number 23. That's how we identified it in the brief. The initial proposition was set forth at the record at 30,706 and Alma agreed with that proposition on page 30,932, also at number 23. To argue now that the RAM-18 was floating in the Gulf of Mexico is directly contrary to what was agreed in the District Court below. Now let's look at how ARIES became the invitee because it went on to the premises, the platform of West Delta 68U. If you read the District Court's opinion and the order denying Alma's motion for reconsideration, the court below cited to the deposition of Captain Yves Plaisance who was the captain of the RAM-18. And this appears in the record at page 30,847. After Captain Plaisance felt comfortable that everyone was okay and the walkway was set up, he would have gone to bed. That was cited to the District Court by the Fieldwood group in its motion. It was cited in support or in opposition to the motion for reconsideration. In the order denying reconsideration of Alma's motion, denying its motion to reconsider, the District Court in fact noted Alma's statement of fact that it said, well, we disagree with that's what Captain Plaisance said. But the District Court also noted, and this appears at page 31,325 of the record, there's no explanation for its disagreement and there was no evidence contradicting that evidence. In fact, the reason why there is such an extensive procedural background in the Fieldwood group's brief is because until Alma appealed this decision, the lower court's decision, there was no mention by Alma concerning that in any briefing submitted to the court. Nowhere in Alma's original opposition memo did it discuss any factual dispute concerning the walkway extending from the lift boat to the platform. And you can read that at page 30,915. They only dispute, they only say, well, ARIES personnel didn't step onto the platform and there was no evidence that the RAM-18 was erected within the boundaries of the mineral lease even though the RAM-18 was actually 40 feet away from the platform and was connected by the walkway. But they didn't mention the walkway in their original opposition memo. And the court found there was, as a result, the court found there was no dispute that the vessel was attached to the platform via the walkway. That's in the record at page 31,251. In fact, the District Court concluded it is undisputed that Fieldwood contracted with ARIES for the use of the RAM-18 and that the vessel attached itself to Fieldwood's platform. That's the conclusion that appears on 31,252 of the record. There's no evidence submitted by Alma contradicting that fact. They just didn't like the way the testimony read. But the District Court had a record and evidentiary basis for that conclusion, which remains undisputed today. Summary judgment on ARIES Marines invitee status was entirely proper. Now, the argument that Alma is now making that somehow its waiver was limited is actually directly contrary to the first sentence of its waiver endorsement. We're required by written contract and only to that extent we agree to waive subrogation. Well, the contract required them to waive subrogation, flew a crane to purchase a policy that waives subrogation in favor of the entire Fieldwood group. Not just Fieldwood, the entire group. And I've already discussed why ARIES Marine is an invitee, and I'll get to Fluid Crane's employees in a second. But, and there's another argument there too, that if Alma didn't give Fluid Crane the policy that Fluid Crane was required to get, then basically under this court's precedent, and we'll get there in a little bit, Fluid Crane has breached the contract for which it is waiving its rights of subrogation, and therefore Alma as the insurer of Fluid Crane can't recover any subrogation either because its insured has already waived that through the breach of the contract. But let's get back to the assuming the argument that ARIES Marine had and Fluid Crane had no contractual interest with each other. Paragraph 12F of the time charter contained a cross-indemnity provision wherein ARIES Marine would agree to indemnify and also waive certain rights against third-party contractors of Fieldwood if those third-party contractors did the same in favor of ARIES Marine. That's paragraph 12F of the time charter. It appears at page 30,824. You look at the Fluid Crane master service contract, and that's paragraph 13F, the same subparagraph numbering, but they're off by one number. That appears on page 30,715. Fluid Crane agreed to the same contractual interest and is a specific designated third-party beneficiary as a result of paragraph 13F of the master service contract. It's a third-party beneficiary of the time charter. It's a nominated third-party beneficiary. To say that Fluid Crane somehow doesn't have a contractual interest in the time charter is false. It's belied by the contractual language, but Alma doesn't focus on the contractual language. It just says it doesn't have a contractual interest. Now, before, in its oral argument, Alma's counsel changed their argument concerning the invitee status of the Fluid Crane claimants. In its briefing in the district court and in its briefing to this court, what Alma was arguing was there was some alleged confusion between the Fluid Crane claimants qualifying as a member of the Fluid Crane group for purposes of indemnity as well as their status as part of the field group for purposes of the waiver of subrogation. That's what they wrote to the district court, and that's what they wrote to this court. Now they're saying somehow Fluid Crane doesn't have a contractual interest in its employees, which I find, frankly, not only not briefed, but it blinks reality. What is clear is that the Fluid Crane claimants are Fieldwoods invitees because they worked on Fieldwoods platform on the 16th and 17th of November, and that's an undisputed fact that Alma agreed with on page 30,929 of the record on item number 7. Not only that, the Fluid Crane claimants slept and ate meals and worked off of the RAM 18 before they began listing. That's also an undisputed fact by Alma, which appears at 30,929 at number 8. And as we've discussed, Alma does not contest that Fieldwood chartered the RAM 18 from Ares. Now, the Fluid Crane master service contract specifically envisioned a situation where the employees of Fluid Crane could qualify for more than one group for purposes of indemnity. That's contained in paragraph 13G of the Fluid Crane master service contract, and that appears at 30,715 in the record. In case Fieldwood and Fluid Crane owed defense and indemnity to another for the same claim, then Fluid's indemnity obligation would be primary and supersede Fieldwood's. So you could be a member of both groups, but to the extent that there was any confusion as to the indemnity provisions, tie goes to Fluid Crane. And that's what the contract provided. Lastly, were this court, and before I get there, the district court concluded based upon the foregoing undisputed material facts that Alma had in fact waived its rights of the entire Fieldwood group. And that was a matter of comparison of the contracts and the policy. But in the unlikely event that Alma's policy argument and interpretation has some sway, this court in Liberty Mutual versus Gulf Oil and ETPM USA versus Natural Gas Pipeline affirmed district court opinions wherein the contractor failed to procure a waiver of subrogation in conformity with the contract, and that failure ended up waiving the right of subrogation of the contractor, and thus the insurer of that contractor for any claim. For the foregoing reasons, the Fieldwood group respectfully requests this court affirm the district court's findings on all points. Thank you for your time. Thank you, Mr. Burkaw. Mr. Woods, you have five minutes. Thank you, Your Honor. One of the arguments raised by counsel was with respect to the Nox and Durr. This court in Nox has held that the Gulf of Mexico is not a premise which could be occupied by a party. If that lift boat had been attached to the platform or if that lift boat was not considered floating, it wouldn't have fallen over. It fell over and then ultimately sank. But they want to ignore that and say that it was attached to the platform. Even if it was attached, we argue that that attachment was temporary and didn't change the positioning of the parties. The fact is that there were no evidence in the record that was cited that said that there was a walkway out and present when the vessel listed. None. The captain, the only evidence in the record is the captain's testimony that I gave instructions for that to happen and I went to sleep. I don't know if it happened. That was the burden of proof that Fieldwood had to prove. In Alma's opposition to the summary judgment, in the contested issues of fact, we argued just read to the district court, just read the deposition testimony that they're saying included a metal walkway being welded. Just read it. It doesn't say what they say it says and therefore that fact is contested. Where I went with the procedural aspect is where Alma is prejudiced in this case is that the leave of court to file this summary judgment occurred after the discovery deadline had already run. And after. So if that were to be an issue, if this motion were to have been filed properly within the discovery deadline, Alma could have gone out and obtained evidence to try to dispute that fact. But it didn't have even the ability to do that. So instead, Alma simply relied on the fact that, hey, that evidence that Fieldwood group says exists concerning the walkway or the placement of a walkway is not what they said it says. Beyond that, there is no other evidence in the record. There's no evidence in the record that Ares ever crossed from the lift boat to the platform. And therefore, because they never accessed the platform, they never accessed the premises. And Ares cannot therefore be an invitee of Fieldwood. Fieldwood cannot control the Gulf of Mexico. They did not control the Gulf of Mexico. And that's why Ares simply cannot be considered an invitee of Fieldwood when it didn't access what Fieldwood controlled, which was the platform. The MSA that's been raised between Fieldwood and Fluorocraine did not include an actual waiver of subrogation. It said simply that it required policies of insurance to be endorsed to waive subrogation against the company group was Fieldwood, its employees, and its invitees. The breach of contract argument is not before the court. And Alma would further argue that there is no breach of contract because the waiver never extended to somebody who wasn't in the group. And because Ares was not an invitee, they don't qualify that. They're not. There's no breach of contract with respect to Ares Marine or anyone else. The district court further erred in determining that Fluorocraine was in contractual privity with Ares Marine. That point was contested because it's also uncontested. Fluorocraine didn't have a contract. It's uncontested that there was no expectation of a vessel involvement and that the vessel wasn't required for Fluorocraine's work. So therefore, when Fluorocraine, and that's the kicker, when that contract was signed, there was no expectation of the use of a vessel. And therefore, Fluorocraine could not have been covered as an invitee. Thank you, Your Honor. Thank you. Your case is submitted, and we are adjourned.